THE PUBLIC ADMINISTRATOR *vs.* WARD.

*In the matter of the Estate of* FURMAN BLACK, *deceased.*

THE statute authorizes the Surrogate, when satisfied there are reasonable grounds for suspecting there are assets of a deceased person concealed or withheld, to issue at the instance of the Public Administrator, a subpœna, to require the attendance and examination of witnesses; and if it then appear that any effects are concealed or withheld, a warrant may be issued for their search and seizure, and the officer executing the same may, if necessary, break open any house in the day time, and deliver the property to the Public Administrator.

Such warrant will not be issued, if the person in possession of the assets shall execute a bond, with sufficient sureties, conditioned to account for and pay to the Public Administrator the value of the assets, when it shall be determined in any suit brought by him that they belong to the estate of any deceased person, which the administrator has authority to collect and preserve.

Where at the testator's death, his widow was possessed of certain coupon bonds which she subsequently sold, claiming that they were her own property, investments of the proceeds of her own labor, and in her own possession prior to her husband's death,—*Held,* that it was not proper to issue a warrant under the statute.

The statute applies to property belonging to the deceased or in his custody, and its primary object is the rescue or restoration of effects not satisfactorily accounted for by persons who were about him in his last illness, or in whose hands the assets had fallen.

If the deceased had not possession at the time of his death, nor twenty days previous, and where no advantage has been taken by attendants, but the claim was adverse to the decedent himself in his life time, it would seem the statute was not intended to apply.

A. B. TAPPAN,
JAMES MONCRIEFF, *for the Public Administrator.*

HORACE HOLDEN,
HORACE F. CLARK, *for the Widow.*

THE SURROGATE.—The public administrator having taken out letters of administration with the will annexed, on the estate of the deceased, made application to the Surrogate for a subpœna to certain persons to appear and be examined " touching the estate and effects of the deceased." The statute authorizes such an inquiry whenever " any goods, chattels, credits, or effects of the deceased, or of which he had possession at the time of his death, or within twenty days previous thereto, shall not have been delivered to the public administrator, nor accounted for satisfactorily by the persons who were about the deceased in his last sickness, or in whose hands the effects of the deceased, or any of them may be supposed at any time to have fallen ;" and on satisfying the Surrogate " by affidavit, that there are reasonable grounds for suspecting that any such effects are concealed or withheld," a subpœna may be issued requiring the attendance and examination of the parties. (2 *R. S., p.* 120, § 8.) Upon the appearance of any person so subpœnaed, he shall be sworn " truly to answer all questions concerning the estate and effects of the deceased, and shall be examined fully and at large by the pub-

lic administrator in relation to said effects." If it shall appear that " any effects of the deceased are concealed or withheld," a warrant issues for the search for and seizure of " the said effects ;" and for that purpose the officer executing the same, may " if necessary break open any house in the day-time," and " deliver the said property so seized to the public administrator." The warrant, however, shall not be issued " to seize any property, if the person in whose possession such property may be, or any one in his behalf " shall execute a bond with sufficient sureties, conditioned " that the obligors will account for and pay to the said public administrator the full value of the property so claimed and withheld," whenever it shall be determined in any suit brought by him " that the said property belongs to the estate of any deceased person, which the administrator has by law authority to collect and preserve." This statute confers very large powers upon the Surrogate, and is to be construed with care, and acted upon with prudence. The scope of the inquiry is large, and for obvious reasons, there being no harm and much probable benefit in ascertaining all the facts possible relative to the estate of the deceased. But when the statute approaches the remedial action of the Surrogate, the language is greatly narrowed. Whatever may have been the extent of the examination, the subject matter of the warrant is definite and limited. The warrant cannot issue unless it appear that some of " the effects of the deceased are concealed or withheld, and the person having the possession of such property shall not give the security."

In the case now before me, the widow of the deceased has acknowledged the possession of some of the assets of the testator, and has delivered them to the public administrator. But it appears by her own statement, that at the testator's death she was possessed of certain coupon bonds to a considerable amount, and which she has since sold. She claims that these bonds were her own property—investments of the proceeds of her own labor, or gifts from her husband, and that prior to his decease they were in her possession.

The person at present having possession of these bonds, has not been ascertained in this inquiry; and the only question now is, whether a warrant for their seizure shall be issued, and an officer be authorized to search for them, and under a roving commission to break open any house. The statute refers generally to any effects of the deceased, "or of which he had possession at the time of his death, or within twenty days previous thereto." The first clause refers to property of the deceased; the second, to such as was in his custody. The bonds which are the subject of the present investigation, do not appear to have been in the testator's custody or possession at the time of his decease. The widow claims them as her own property, and alleges constant possession. I have very great doubts whether this statute was intended to be applied to a case where the party having the property, holds under a fair color of title, adversely as against the deceased, and not derived through him. The primary object seems to have been the rescue, or restoration of effects of the deceased not satisfactorily accounted for by the persons who were about him in his last sickness, or in whose hands they had fallen. The provision restraining the issue of a warrant if a bond be given, of course implies that a warrant may issue when there is an adverse claimant—but then the nature of the claim, its apparent reasonableness, and the evidence and circumstances by which it is supported, may all be taken into consideration by the court in determining whether the subject matter constituted "effects of the deceased" at the time of his death. Where the deceased had not possession of the property at his death, nor twenty days previous thereto,—where no advantage has been taken by attendants during the last sickness, so as to purloin, secrete, or obtain effects by importunity, fraud, or undue influence; where at the time of the decease the assets remained in the same possession and condition as they were in for a long time before; and where in fact the claim to the effects is independent and adverse even as to the deceased himself, it seems to me the statute was not designed to be invoked. The public administrator has the same remedy the

intestate had, by his action at law. The claimant has not come into possession by seizure, but she held under color of title in the intestate's lifetime; and there would seem to be no reason why the occurrence of his death should expose her to have the subject of controversy forcibly wrested from her by an extraordinary process.

But again, the warrant is not to be issued unless it appear that the effects of the deceased " are concealed or withheld." The bonds in question are neither concealed nor withheld— they have been sold. The widow is not in possession, and therefore cannot surrender possession. The bond is to be given by the person in possession or some one in his behalf—that person has not been ascertained, nor has any effort been made for that purpose. If it were made, it would result only in finding a purchaser in good faith for a valuable considera- tion. If the property had clearly belonged to the intestate, and been unlawfully seized and disposed of, a warrant ought not to be stayed because the wrong-doer had sold it. But under such a claim of title as is made in the present case, it would I think be a harsh proceeding, never contemplated by the law, to compel an honest purchaser who had paid the consideration, to surrender the property. I am of the opinion therefore under the circumstances, that a warrant should not issue.